UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REAL ESTATE INVESTORS ASSOC.,
JAMES WHITMEYER, JAMES PAIGE, JR.,
JAMES BAXTER, CARMELO MAZZURCO,
SEBATIANO MAZZURCO, CHARLES LUDWIG,
and SAMUEL POLLINO,

                              Plaintiffs,

            v.

CITY OF JAMESTOWN, CITY OF
JAMESTOWN BOARD OF PUBLIC UTILITIES,
SAMUEL TERESI, in his official capacity as
mayor of the City of Jamestown and member of
the Board of Public Utilities, and MATTHEW DIMAS,
in his official capacity as Chairman of the Board
of Public Utilities,

                              Defendants.
_____

**AMENDED
REPORT
and
RECOMMENDATION**

**00-CV-0815A(F)**

APPEARANCES:        ALISON L. MICAL
                    DAVID J. SEEGER
                    Attorneys for Plaintiffs
                    69 Delaware Avenue, Suite 1100
                    Buffalo, New York 14202

                    WRIGHT, WRIGHT and HAMPTON
                    Attorneys for Defendant
                    EDWARD P. WRIGHT, of counsel
                    525 Fairmount Avenue, W.E.
                    Post Office Box 1198
                    Jamestown, New York 14702-1198

## JURISDICTION

        This case was referred to the undersigned by the Hon. Richard J. Arcara on

October 20, 2000 for report and recommendation on all dispositive motions and for

decision on all non-dispositive motions.  (Doc. No. 4).  The matter is currently before the

court for report and recommendation on Plaintiff's motion for attorneys' fees pursuant to 42 U.S.C. § 1988 (Doc. Nos. 69, 71).

## BACKGROUND

On September 19, 2000, Plaintiffs, Real Estate Investors Association and five of its members who own rental property in the City of Jamestown, commenced a civil rights action, pursuant to 42 U.S.C. § § 1983, 1988 and section 65 of the New York State Public Service Law against the City of Jamestown, its Board of Public Utilities ("BPU"), Jamestown's Mayor Samuel Teresi and the Chairman of the BPU, Matthew Dimas.[1]   In their Complaint, Plaintiffs alleged that their rights under the New York Public Service Law §65, Subdivision 3 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment were violated by the BPU's placement of liens on their properties as a result of their respective tenants' nonpayment of municipal utility bills. On October 13, 2000, Defendants filed their answer, which included a counterclaim that the action was an attempt to intimidate elected officials and requested costs and monetary sanctions pursuant to 42 U.S.C. §1988 and Rule 11 of the Federal Rules of Civil Procedure.  Answer at 6.  Plaintiffs responded that Defendants' counterclaim failed to state a claim upon which relief could be granted. Plaintiffs' Reply to Defendants' Counterclaim, November 1, 2000 (Doc. No. 5).

On December 26, 2001, Defendants filed a motion for summary judgment,

---

[1] On June 13, 2001, Plaintiffs filed an Amended Complaint adding Jamestown rental property owners Charles Ludwig and Samuel Pollino as Plaintiffs (Doc. No.30). Defendants filed their Answer to First Amended Complaint on December 20, 2001(Doc. No. 16).

attached to which were excerpts from various municipal ordinances throughout New York State which allegedly imposed liens for unpaid utility service fees. [2]  In further support of summary judgment, Defendants filed the Affidavit of the business manager of the BPU, Michael A. Anderson (Doc. No. 19) ("Anderson Affidavit") with attached exhibits, the Affidavit of Jamestown Mayor Samuel Teresi (Doc. No. 20) ("Teresi Affidavit"), a memorandum of law in support of their motion (Doc. No. 21) ("Defendants' Memorandum 1"), and Defendants' Statement of Undisputed Facts Pursuant to Local Federal Rule of Civil Procedure 56 (Doc. No. 22) ("Defendants' Fact Statement").

On February 1, 2002, Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 26) ("Plaintiffs' Memorandum 1") in which they withdrew their causes of action for the alleged violations of substantive due process, equal protection, and the New York Public Services Law § 65, Subdivision 3.  Plaintiffs' Memorandum 1 at 12.  However, Plaintiffs maintained that they had been deprived of procedural due process and requested that summary judgment be granted as to liability.[3]  Plaintiffs filed in support of their opposition, the Affidavit of Plaintiff James Whitmeyer (Doc. No. 27) ("Whitmeyer Affidavit"), the Affidavit of Plaintiff Samuel

---

[2] Defendants' motion was originally captioned "Motion to Dismiss Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure."  However, the undersigned determined it should be considered as a motion for summary judgment based on Defendants' specific request that "summary judgment" be granted, their reliance on materials outside of the pleadings in support of this motion, the attachment of a statement of undisputed facts as required by Local Rule 56 for a summary judgment motion brought pursuant to Federal Rule of Civil Procedure 56, and Plaintiffs' treatment of Defendants' motion in Plaintiffs' response as a motion for summary judgment.  In his Decision and Order, issued September 30, 2004, Judge Arcara concurred that the motion "can and should be construed as a motion for summary judgment."  (Doc. No. 58-4 at 2, fn 2).

[3] In his Decision and Order filed September 30, 2004, Judge Arcara refused to construe Plaintiffs' motion as one for summary judgment, stating that "it fails to comply with Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the Western District of New York governing the procedure for making a motion for summary judgment."  (Doc. No. 53).

Pollino (Doc. No. 28) ("Pollino Affidavit") and the Affirmation of David J. Seeger, Esq.,

with attached excerpt from the deposition of Michael A. Anderson (Doc. No. 29)

("Seeger Affirmation 1").  On February 15, 2002, Defendants filed their Reply

Memorandum of Law (Doc. No. 31) ("Defendants' Reply Memorandum 1") and the

Reply Affidavit of Michael A. Anderson (Doc. No. 32) ("Anderson Reply Affidavit"), with

attached exhibits.  Oral argument was deemed unnecessary.

On August 22, 2003, the undersigned issued a Report and Recommendation,

recommending that Defendants' motion for summary judgment be granted and

Defendants' request for Rule 11 sanctions be denied.  ("the Report and

Recommendation").  Plaintiffs filed objections to this report and recommendation on

August 9, 2003.  Oral argument was initially scheduled for November 26, 2003, then

rescheduled for December 5, 2003, before the Hon. Richard J. Arcara, but did not occur

(Doc. Nos. 38, 41, 45).  Settlement conferences held on January 29, 2004 (Doc. No.

47) and on April 2, 2004 (Doc. No. 48) were futile.  Oral argument on Plaintiffs'

objections to the Report and Recommendation, initially scheduled for May 12, 2004

before the Hon. Richard J. Arcara, was adjourned several times, and finally held on

June 4, 2004 (Doc. Nos. 48, 52) at which the court reserved decision.  Plaintiffs'

objections to the report and recommendation were filed on September 9, 2003.  (Doc.

No. 35).  Thereafter, Defendants filed responses to Plaintiffs' objections on September

24, 2003 and April 30, 2004.  (Doc. Nos. 36, 49).  On September 30, 2004, Judge

Arcara denied Defendants' Summary Judgment Motion, and granted in part and denied

part.  (Doc. No. 53).  Specifically, the court (1) dismissed the action against plaintiff

Investors; (2) dismissed the action against the BPU; (3) found that plaintiff-landlords

4

were entitled "to notice and a hearing before the placement of the liens on their property

by the defendants;" (4) dismissed defendants' counterclaim; (5) denied defendants'

request "for sanctions, attorneys' fees and costs"; and (6) denied Defendants' motion

for summary judgment  (Doc. No. 53).  Plaintiffs filed a Memorandum of Law (Doc. No.

62) ("Plaintiffs' Memorandum 2") in Support of their Motion for Summary Judgment

(Doc. No. 55) on December 1, 2004.  On December 29, 2004, the City of Jamestown

filed a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment.  (Doc.

No. 63) ("Defendants' Memorandum 2").  In response, Plaintiffs filed a Reply to

Defendants' Response to the Plaintiffs' Motion for Summary Judgment.  (Doc. No. 68)

("Plaintiffs' Reply 1").  Oral argument on Plaintiff's Summary Judgment Motion was held

on January 21, 2005, at which the court reserved decision.  On March 11, 2005, the

court issued an Order granting Plaintiffs' Motion for Summary Judgment.  (Doc. No. 69)

("Decision and Order").  In that Order, Judge Arcara stipulated that Plaintiffs must file

any motions for attorney's fees and costs by April 15, 2005, and referred the case to the

undersigned for report and recommendation on such motions.  Decision and Order at 3-

4.

Plaintiffs filed this motion for an award of attorney's fees pursuant to 42 U.S.C. §

1988 and Fed.R.Civ.P. 54 on April 15, 2005.  (Doc. No. 71).  In support of the motion,

Plaintiffs filed an Affirmation of David J. Seeger, Esq. (Doc. No. 71-2)  ("Seeger

Affirmation 2"), Exhibit A to the Affirmation of David J. Seeger, Esq. (Doc. No. 71-3)

("Statement of Legal Services Rendered"), a Memorandum in Support of Plaintiffs' fee

application (Doc. No. 71-4)  ("Plaintiffs' Memorandum 3"), and a Certificate of Service

(Doc. No. 71-5).  The court established a scheduling order, requiring responses due by

5

May 6, 2005 and replies by May 13, 2005 (Doc. No. 72).  Oral argument was at the

court's discretion.  *Id.*  In response to the motion, on May 5, 2005, Defendants filed the

affidavit of Edward P. Wright (Doc. No. 73) ("Wright Affidavit") in response to Plaintiffs'

application for attorneys fees and disbursements and the affidavit of Scott L. Bensik

(Doc. No. 75) ("Bensik Affidavit") comparing the damages alleged by Plaintiffs James

Paige, Jr., James Whitmeyer, Samuel Pollino, Charles Ludwig, and James Baxter by

payment of money to the BPU to satisfy liens against their properties to the records of

the BPU.  Additionally, on May 5, 2005, Defendants filed a Memorandum in Opposition

to the same.  (Doc. No. 74) ("Defendants' Memorandum 3").  Exhibits to the Motion for

Attorney's Fees were then filed. [4]  (Doc. No. 76).  On May 13, 2005, Plaintiffs filed a

Reply Memorandum in Support of their Motion for Attorneys' fees with Exhibits. [5] (Doc.

No. 78) ("Plaintiffs' Reply 2").

Oral argument was deemed unnecessary.  For the reasons that follow, the

Plaintiff's motion for attorney's fees should be **GRANTED** in the amount as modified by

the court.

## DISCUSSION

Section 1988 of the Civil Rights Attorney's Fee Award Act of 1976 provides that

the court, in its discretion, may allow the prevailing party reasonable attorney's fees as

---

[4] On May 6, 2005, Exhibits including a Jamestown Board of Public Utilities Customer Information Sheet and Tax Roll Information regarding Plaintiffs' parcels of land were filed (Doc. No. 76).  A certificate of service was also filed on May 6, 2005 (Doc. No. 77).

[5] Exhibits include the Affirmation of David J. Seeger, Esq. (Doc. No. 78-2), the First Amended Compaint Adding Parties Plaintiff (Doc. No. 78-3), and a Certificate of Service (Doc. No. 78-4).

part of its costs.  First, the moving party must demonstrate that he is the "prevailing

party," and second, the court must determine a reasonable fee based on the particular

facts of the case.  *See Hensley v. Eckerhart,* 461 U.S. 424 (1983).  The starting point

for this calculation is the so-called "lodestar" amount, which is the number of hours

reasonably expended multiplied by a reasonable hourly rate.  *Hensley,* 461 U.S. at 433.

        Generally, parties are considered prevailing "if they succeed on any significant

issue in litigation which achieves some of the benefit the parties sought in bringing suit."

*Hensley,* 461 U.S. at 433.  Here, Defendants do not specifically allege that Plaintiffs are

not a prevailing party.  Defendants do assert, however, that Plaintiffs' decision to

withdraw three causes of action pled in the Complaint limited the extent to which

Plaintiffs prevailed.  Specifically, Defendants argue that Plaintiffs commenced this

action seeking "a declaration that § 125 of the Laws of New York was unconstitutional

and that the lien concept violated the equal protection and substantive due process

clauses of the 14th Amendment, 42 U.S.C. §§ 1983 and 1988, and the anti-

discrimination clauses of § 65 of the New York Public Service Law."  Defendants'

Memorandum 3 at 6.  Defendants contend that, had Plaintiffs successfully litigated

these claims, they would have invalidated $1,600,000 of liens.  *Id.*  Instead, Defendants

maintain Plaintiffs successfully invalidated less than two percent of this figure, or

$22,634.88 of liens. *Id.*

        In their Reply Memorandum, Plaintiffs contend that they withdrew these three

causes of action early in the litigation for legitimate reasons, which Defendants fail to

contradict or challenge.  Plaintiffs' Reply 2 at 5.  Plaintiffs withdrew their Equal

Protection and New York Public Service Law claims based on "information gained from late discovery obtained from Defendants" and they withdrew their substantive due process claim based on the Supreme Court's decision in *Dunbar v. City of New York,* 251 U.S. 516 (1920) (holding that the New York City Charter provision providing for a lien on property for unpaid water bills did not violate due process). [6]  Plaintiffs' Memorandum 1 at 12.   Additionally, Plaintiffs contend they successfully litigated their procedural due process claim against Defendants "and are thus prevailing parties for purposes of 42 U.S.C. § 1988."  Plaintiffs also contend they are a prevailing party because the court awarded them summary judgment and "all of the relief [that they] requested," including "full and complete recovery of their monetary damages," an injunction against Defendants' liens attaching in lieu of procedural safeguards, and declaratory relief which rendered "all liens placed against their property null and void." Bracketed Material Added.  Plaintiffs' Reply 2 at 6.   Further, as a result of this litigation, Plaintiffs note that Defendants were directed to "formulate notice and hearing procedures" not required in the City of Jamestown prior to this litigation and refund money Plaintiffs paid Defendants "to satisfy the property liens declared illegal." *Id.*

"Absent explicit statutory authority" providing otherwise, parties in the United States are generally expected to pay their own attorneys' fees. *Key Tronic Corp. V. United States,* 511 U.S. 809, 819 (1994); *Alyeska Pipeline Service Co. V. Wilderness Society,* 421 U.S. 240, 247 (1975), *superseded by statute*, Civil Rights Attorney's Fees

---

[6] *Dunbar* has been held to stand for the proposition that a landowner's consent to municipal utility services provide a sufficient legal basis for imposition of a lien for unpaid service to withstand contention that city charter provisions authorizing such liens violate substantive due process. *Ransom v. Marrazzo*, 848 F.2d 398, 411 (3d Cir. 1988).

Award Act of 1976, 42 U.S.C. § 1988.  See *State of New York v. SCA Services, Inc.*, 754 F.Supp. 995 (S.D.N.Y. 1991).  In the instant case, the relevant statute is 42 U.S.C. § 1988(b), which authorizes awarding attorneys' fees to the "prevailing party."  The Supreme Court has held a party is prevailing when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992).  Further, "after *Buckhannon Bd. and Care Home, Inc., v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 602 (2001), a plaintiff must not only achieve some "material alteration of the legal relationship of the parties," but that change must also be judicially sanctioned."  *Roberson v. Guliani,* 346 F.3d 75, 79 (2d. Cir. 2003).

The determination that Plaintiff is a "prevailing party" does not require plaintiff to successfully litigate "the central issue" in the case . . . and [plaintiff] need not have obtain[ed] the primary relief sought"  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d. Cir. 1998). [7]  Rather, plaintiff succeeds on "any significant issue in [the] litigation . . . regardless of the magnitude of the relief obtained," plaintiff is considered a prevailing party if the relief awarded was on the merits and materially altered the legal relationship between Plaintiff and Defendant to the Plaintiff's benefit.  *Id.*  The court finds the outcome in the instant case satisfies this standard.

Specifically, though Defendants, in effect, allege that Plaintiffs did not succeed on the central issues in the case by withdrawing Plaintiffs' initial  claims of Equal

---

[7] First bracketed insert added.

Protection, New York Public Service Law and Substantive Due Process violations, thus achieving only limited success, success on a central issue in the case is not required of Plaintiffs, nor is obtaining the primary relief sought.  Thus, the fact that Plaintiffs did not invalidate the full amount of the liens imposed or $1,600,000, as identified by Defendants in Defendants' Memorandum 3, *Discussion, supra,* at 7, is irrelevant. Plaintiffs satisfy the standard set forth above because (1) they obtained some relief, even if it is less than two percent of the relief they could have realized if they successfully litigated the claims they withdrew, *LeBlanc-Sternberg, supra;* (2) they were awarded relief on the merits; and (3) the court sanctioned a legal alteration of the relationship between Plaintiffs and Defendants in a way that benefits Plaintiffs.

Here, the court (1) granted Plaintiffs' motion for summary judgment, (2) awarded Plaintiffs a declaratory judgment against the City of Jamestown nullifying liens placed on real property of the Plaintiff-landlords for unpaid utility services from January 1, 1998, (3) entered judgment against the City of Jamestown "for liens satisfied by the plaintiffs within the statute of limitations period," including pre-judgment interest, and (4) issued an injunction "enjoining the placement of liens on plaintiffs' properties for unpaid tenant utility bills" until the City implemented procedures that comply with procedural due process as declared by the court.  Doc. No. 69 at 2-3.  Accordingly, the court finds that Plaintiffs successfully litigated a significant issue in the case.  Additionally, the court effectively sanctioned a legal alteration in the relationship between Plaintiffs and Defendants by requiring the City of Jamestown to establish procedures that comply with

the procedural due process requirements of the Fourteenth Amendment. [8]  *Id.* at 3.

Further, plaintiffs who win nominal or compensatory damages for the alleged denial of due process are prevailing parties under § 1988.  *Id.* at 112-113.  The technical nature of the damages awarded to Plaintiffs does not negate their designation as a "prevailing party."  *Id.* at 114.

As noted, *supra*, at 8, Plaintiffs were awarded the full amount of damages requested in their summary judgment motion for procedural due process violations. Because even plaintiffs who win nominal damages for alleged due process violations are considered prevailing parties under § 1988 based on the court's holding in *Farrar*, *supra,* the court finds that Plaintiffs qualify as the "prevailing party" under § 1988.

Defendants also contend that Plaintiffs should not be awarded attorneys' fees and costs because they allege Plaintiffs' claims for damages in their Affidavits are "factually incorrect."  Defendant's Memorandum 3 at 4.  Specifically, Defendants argue Plaintiffs seek damages for

> (i) moneys which were paid by the tenants, not by the Plaintiffs; (ii) moneys which were paid by the Plaintiffs, but subsequently reimbursed to the Plaintiffs after the BPU was successful in collecting the moneys from the Plaintiffs' tenants; (iii) moneys which were never paid by the Plaintiffs; (iv) moneys paid by the Plaintiffs for utilities which were in the Plaintiffs' names rather than their tenants; and (v) moneys which were supposedly paid at the time of purchase of the propert(ies) rather than by the Plaintiffs at the time of the sale of the property (ies)."

---

[8] Defendants dispute the significance of this requirement, arguing that "as soon as notice and a hearing process have been extended to the Plaintiffs, the municipality may reinstate those liens.  Any and all other existing liens were valid and any future liens may be imposed as well if notice and an opportunity for a hearing are extended to landlords."  Defendant's Memorandum 3 at 4.  However, the court finds Defendants' contention irrelevant.  This requirement, imposed by the court, effectively alters the relationship between Plaintiffs and Defendants in the Plaintiff's favor in accordance with the strictures of the governing law.

*Id.* at 4-5.  *See also* Bensik Affidavit (Doc. No. 75).

Additionally, according to Scott L. Bensik, customer services supervisor and key accounts manager for the City of Jamestown Public Board of Utilities, several factual discrepancies exist with respect to damages claimed by Plaintiffs James Paige, Jr., James Whitmeyer, Samuel Pollino, Charles Ludwig, and James Baxter regarding money expended to satisfy the liens placed against Plaintiffs' properties for non-payment of municipal utility bills.  Bensik Affidavit ¶¶ 1-41.  Plaintiffs argue that Defendants failed to appeal Judge Arcara's decision and therefore, Defendants are barred from raising arguments here which challenge the relief granted by the court. Plaintiffs' Reply 2 at 4-5.

Pursuant to Fed.R.App.P. 4(a)(1)(A), an appeal of this Decision and Order would have required Defendants to file a Notice of Appeal to the U.S. Court of Appeals for the Second Circuit with the Clerk of the Court within 30 days of the Decision and Order. *Taylor v. Kurtz,* 2004 WL 2414847 * 5 (W.D.N.Y. 2004).  Plaintiffs contend that Defendants failed to appeal and are out of time to do so.  Additionally, the court observes that Defendants are, in effect, attempting to reargue the merits of claims already resolved on summary judgment.  Further, the court fails to see how damages awarded to Plaintiffs by Hon. Richard J. Arcara in his Decision and Order issued March 8, 2005 for liens previously satisfied by Plaintiffs are in any way relevant to the court's present determination of attorneys' fees. Thus, the court deems Defendants challenge to Plaintiffs' award of attorneys' fees on this ground without merit.

Defendants also argue that Plaintiffs' request for attorneys' fees is time-barred because "the Decision and Order provides that Plaintiffs may file a motion for fees and

12

costs by April 1, 2005." Defendants' Memorandum 3 at 5.  Plaintiffs contend they timely

filed their motion for Attorneys' fees on April 15, 2005.  Plaintiffs' Reply 2 at 5.  The

court notes that the Decision and Order issued by the Hon. Richard J. Arcara (Doc. No.

69) on March 8, 2005 and filed March 11, 2005, states the deadline for filing attorneys'

fees in this case as April 1, 2005. However, that same Order (Doc. No. 69), as recorded

on the electronic filing system (CM/ECF) by the Clerk of the Court, identifies the filing

deadline as April 15, 2005.  Additionally, the Decision of the Court, signed by Court

Clerk Rodney C. Early and filed on March 11, 2005, identifies April 15, 2005 as the

deadline for filing a motion for attorneys fees and costs.  (Doc. No. 70).  As such, the

court finds Plaintiffs reasonably relied on the deadline date recorded by the Clerk's

office in Docket Nos. 69 and 70 as April 15, 2005.  Moreover, Defendants fail to allege

how Plaintiff's filing on April 15, 2005 instead of April 1, 2005 in any way prejudiced

them.  Based upon the discrepancies in the record as to the actual deadline for filing a

motion for attorneys' fees and costs and the absence of prejudice to Defendants as a

result of the later filing, the court finds Plaintiffs' filing on April 15, 2005 constitutes, at

most, an excusable oversight.  Thus, Defendants' request to deny Plaintiffs' motion for

attorneys' fees and costs on this basis should be DENIED.

As stated, *supra,* at 7, Defendants contend that if Plaintiffs are awarded

attorneys' fees, the award, or "lodestar amount," should be reduced based on the

limited success Plaintiffs achieved in litigating their claims. [9]  Defendants question the

extent to which Plaintiffs "prevailed" as a result of their voluntary withdrawal of claims

---

[9] The Second Circuit has stated "[t]he lodestar approach governs the initial estimate of reasonable fees."
*Grant v. Martinez,* 973 F.2d 96, 99 (2d. Cir. 1992).

> [1] that § 125 of the Laws of New York was unconstitutional and [2] that
> the lien concept violated the equal protection and substantive due process
> clauses of the Fourteenth Amendment, 42 U.S.C. §§ 1983 and 1988, and
> [3] the anti-discrimination clauses of § 65 of the New York Public Service
> Law.

Bracketed Material Added.  Defendant's Memorandum 3 at 6.  *Discussion, supra*

at 7.

To arrive at a reasonable "lodestar" amount, the court must calculate the number

of hours reasonably expended by a party multiplied by a reasonable hourly rate.

*Hensley,* 461 U.S. at 433.  "The fee applicant has the burden to establish the

reasonableness of both the number of hours worked and the rate charged."  *Catanzano*

*v. Doar,* 378 F.Supp.2d 309, 313-14 (W.D.N.Y. 2005) (citing *Hensley,* 461 U.S. at 433).

Hours that were "excessive, redundant, or otherwise unnecessary" should be excluded

from the fee calculation.  *Catanzano, supra,* at 313-14.  A rate is reasonable if it is "in

line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation."  *Id.* at 314.  The most critical factor which

may lead to an adjustment of the lodestar amount is the extent of a plaintiff's success.

*Id.*

The Supreme Court held where a case involves "distinctly different claims for

relief that are based on different facts and legal theories," work on the unsuccessful

claims cannot be included in plaintiff's calculation of attorneys' fees.  *Hensley v.*

*Eckerhart,* 461 U.S. 424, 434-35 (1983).  However, where a plaintiff's claims include "a

common core of facts or will be based on related legal theories . . . such a lawsuit

cannot be viewed as a series of discrete claims."  *Id.* at 435.   Where there is a

14

common core of facts or related theories that unite several different claims, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation." *Id.*  Additionally,

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

Hensley, *supra* at 435 (1983) (underlining added).

Based on the applicable caselaw, the fact that Plaintiffs withdrew three of four causes of action as initially pleaded in the Complaint does not, by itself, require the court reduce an award of attorneys' fees by the amount of time spent on the withdrawn claims.  *Hensley, supra,* instructs that the court's "failure to reach certain grounds" does not warrant a reduction in the fee.  Instead, *Hensley* requires a determination of whether a common core of facts applicable to the withdrawn and litigated causes of action exists, whether the theories are related, and whether the overall relief obtained by the plaintiff in making an award.

In *Catanzano v. Doar,* 378 F.Supp.2d 309 (W.D.N.Y. 2005), the defendant argued that plaintiffs' attorneys' fee award should be reduced based on plaintiffs' limited success.  *Id.* at 324.  Further, defendant alleged that plaintiffs should not be awarded attorneys' fees "for work spent on their first, third, fourth and fifth causes of action, which were all dismissed without prejudice."  *Id.*  However, the court pointed to the "common core of facts" upon which these legal theories were based and determined that "[a]lthough each claim was based on a distinct legal theory (as separate causes of action generally are), they all arose out of a common nucleus of facts."  In the instant

case, the court finds no merit to Defendants' argument that Plaintiffs achieved limited success by withdrawing all but their procedural due process violation claim.  However, assuming, *arguendo,* that Plaintiffs achieved limited success, there would nevertheless be a common nucleus of facts which united the various claims. As such, under *Catanzano,* the next step is to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," and not on the specific time allotted to each issue.  *Id.* at 326.  Specifically, in *Catanzano* the court found that each claim in the complaint requested injunctive relief which was "virtually the same as the relief that was ultimately obtained."  *Catanzano,* 378 F.Supp.2d at 326. "Plaintiffs sought similar relief under different theories."  *Id.*  As in the case at bar, plaintiffs in *Catanzano* requested declaratory relief on all claims, but were not granted such relief on those claims that were withdrawn earlier.  In the instant action, Plaintiffs requested compensatory damages in each cause of action in the Complaint, but were not awarded damages for the withdrawn claims. [10]  Plaintiffs were, however, awarded the full amount of compensatory relief requested under their main procedural due process claim.

In *Catanzano,* the court also determined that as Plaintiffs' main objective in instituting the action against the state Defendant was to obtain injunctive relief and force Defendant to institute procedural changes, such relief was a factor in its determination that plaintiffs were essentially granted all the relief they sought.  *Id.*  Here,

---

[10] As stated, *discussion, supra,* at 10, the court awarded Plaintiffs a declaratory judgment against Defendant City of Jamestown nullifying liens placed on real property of the Plaintiff-landlords for unpaid utility services from January 1, 1998.

16

Plaintiffs requested, after each and every cause of action asserted by the Complaint, "injunctive relief prohibiting the Defendants' imposition of such further liens and requiring the removal of all such existing liens".  Complaint ¶¶ 33, 47, 54, 60.  Although Defendants were not granted injunctive relief pursuant to each and every cause of action in the Complaint, they obtained the same equitable relief they would have been granted had they successfully litigated all causes of action as pled in the Complaint. "Furthermore, even assuming that plaintiffs are not entitled to fees on the dismissed claims, there is no indication that any significant amounts of time were expended on them."  *Catanzano, supra,* at 326.  Similarly, Plaintiffs in this case withdrew the aforementioned causes of action early on in the litigation, and there is no indication from the "Statement of Legal Services Rendered," Doc. No. 71-3, submitted by Plaintiffs in application of their attorneys' fee award that Plaintiffs spent a significant amount of time on those claims.

As such, the court finds that although Plaintiffs brought claims for relief under different legal theories, the relief requested pursuant to each cause of action was essentially the same, and insofar as Plaintiffs were awarded the full amount of relief requested on their Procedural Due Process claim, the court finds Plaintiffs were awarded, in effect, all of the relief they requested.  Thus, Plaintiffs' request for attorneys fees should not be diminished based on the fact that they earlier withdrew three of four of their original causes of action.

As stated, *Discussion, supra,* at 14, "The fee applicant has the burden to establish the reasonableness of both the number of hours worked and the rate

17

charged." *Catanzano, supra,* at 313-14 (citing *Hensley, supra,* at 433).  A rate is

reasonable if it is "in line with those prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation."  *Id.* at 314.  The

lodestar calculation should exclude fees for work that are "excessive, redundant or

otherwise unnecessary." *Hensley, supra*, at 434.  Further, to avoid the need to review

each item for which reimbursement is requested, courts have permitted a percentage-

based reduction from the number of hours submitted as a means of trimming excess

time from a fee request.  *Walker v. Coughlin*, 909 F.Supp. 872, 881 (W.D.N.Y. 1995)

(making a 15 % reduction in the total number of non-travel hours requested) (citing

cases); *see also New York State Association for Retarded Children, Inc. v. Carey*, 711

F.2d 1136, 1147 (2d Cir. 1983) (holding that courts have endorsed percentage cuts as

a practical means of "trimming fat" from a fee application).

   Plaintiffs request an order awarding them litigation costs, including reasonable

attorney's fees in the amount of $54,756 and disbursements totaling $628.26, totaling

$55,384.26.  Plaintiffs base this figure on the number of attorneys who worked on the

case, the attorneys' respective years of experience as practicing attorneys and the

prevailing market rate for such litigation services.  Specifically, Plaintiffs identify as

attorneys who worked on this case David J. Seeger, Esq., an attorney admitted to

practice law in New York State in 1981 who has concentrated his practice in civil

litigation for more than 23 years and Alison L. Odojewski, Esq., an associate attorney

admitted to practice in New York State in June, 2000, who assisted Mr. Seeger.

Seeger Affirmation 2 at 1-2.  Particularly, Plaintiffs request attorneys' fees at an hourly

rate of $240 for 176.05 hours of work performed by attorney Seeger, and at $160 for

78.15 hours of work performed by attorney Odojewski, for a total of 254.20 hours.

Plaintiffs' Memorandum 2 at 5, 7.  In support of this request, Plaintiffs rely upon *Alnutt*

*v. Cleary*, 27 F.Supp.2d 395, 339-401 (W.D.N.Y. 1998), where the court determined

that $180 was a reasonable hourly fee for an attorney with 8 years experience to

charge for work performed between 1993 and 1998. *Id.* at 7.  Additionally, Plaintiffs

point out that the court determined a rate between $110 and $205 was reasonable "for

middle to senior level associates for work performed through 1998," and also indicated

today's rates "would be even higher." *Id.*

As stated, *supra,* at 14, to determine whether the lodestar amount is reasonable,

the court must first determine whether the amount of time expended and the hourly rate

requested are both reasonable.  The court will consider the prevailing rates in this

district to determine the reasonableness of Plaintiffs' requested hourly rate. *Polk v.*

*New York State Dep't of Correctional Services*, 722 F.2d 23, 25 (2d. Cir. 1983)

("normally a district court awarding attorney's fees under Section 1983, will consider the

prevailing rates in the district in which the court sits").  Plaintiffs request that the rate be

based on prevailing rates, not historical ones.  Seeger Affirmation 2 ¶ 5; Plaintiffs'

Memorandum 3 at 7.  As noted, the case was commenced in 2000, and has covered

several years of litigation.  Utilization of current rates has been held to properly

compensate the successful plaintiff for the delay in payment. *Elliott v. Bd. of Educ. of*

*the Rochester City Sch. Dist.,* 295 F.Supp.2d 282, 285 (W.D.N.Y. 2003).  Thus, the

lodestar calculation should be based on "prevailing market rates" for attorneys of

comparable skill and standing in the legal community at present.  *Elliott,* 295 F.Supp.2d at 284 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)).  The court finds that Mr. Seeger, at the time the case was commenced, had over 18 years of experience in civil rights litigation and was comparable to a partner in a major law firm.  By contrast, Ms. Odojewski had been employed as a staff attorney with Mr. Seeger's law firm since 2000, less than a year before she began work on this action on January 18, 2001. Although in his affirmation submitted in support of the instant Motion, Mr. Seeger represents that Ms. Odojewski has worked extensively on civil rights litigation since her employment with his firm, such fact is irrelevant to her relative inexperience in the area of civil rights litigation at the time she began work on this action.  Seeger Affirmation ¶ 4.  In fact, Mr. Seeger states that Ms. Odojewski "graduated from law school in December, 1999," that she worked for his law firm from "March, 2000 to the present," and that she "was admitted to practice in the Courts of the State of New York and in the United States District Court, Western District of New York. [sic] in June, 2000."  *Id.* Based on these facts, the court concludes that employment with Mr. Seeger's law firm was Ms. Odojewski's first employment out of law school and as an admitted attorney. Thus, at the time she commenced work on this case, Odejewski was essentially a junior level associate in Mr. Seeger's law office.

"The burden is on the plaintiff to establish the reasonableness of both the number of hours worked and the rate charged." *Berry v. N.Y. State Dept. of Correctional Services,* 947 F.Supp. 647, 649 (W.D.N.Y. 1996).  "The fee applicant normally satisfies this burden by submitting the affidavits of other attorneys in the

relevant legal community, attesting to the range of prevailing rates charged by attorneys

with similar skill and experience."   *Sabatini v. Corning-Painted Post Area School Dist.*,

190 F.Supp.2d 509, 514-15 (W.D.N.Y. 2001) (quoting *P.G. v. Brick Township Bd. of*

*Educ.*, 124 F.Supp.2d 251, 261 (D.N.J. 2000)) (internal quotation omitted).   The only

evidence submitted by Plaintiffs in this case to support their contention that a fee of

$240/hour for Mr. Seeger and $160/hour for Ms. Odojewski is reasonable is their

reference to *Alnutt*, *discussion, supra,* at 19, the 1998 case where Judge Larimer found

that $180 was a reasonable hourly fee for an attorney with 8 years experience to

charge for work performed between 1993 and 1998, and a rate of $110 to $205 was

reasonable "for middle to senior level associates for work performed through 1998," and

indicated today's reasonable rates "would be even higher."   *Alnutt,* 27 F.Supp.2d at

339-401.   Based on the statement in *Alnutt* that fee rates "would be even higher today,"

Plaintiffs argue that their request is reasonable.   Significantly, in *Alnutt,* the Plaintiff

submitted three affirmations from attorneys in her community attesting that the rates

she requested were "commensurate with the rates charged by other attorneys in the

region with similar levels of education, experience and reputation."   *Id.* at 400.

Plaintiffs in this case, however, submit no affidavits in support of their claim that the

suggested rates are reasonable for attorneys of their experience in this particular area

of litigation. [11]   However, Defendants do not specifically challenge the reasonableness

of Plaintiffs' proposed hourly rates.   As a threshold matter, therefore, the court finds that

---

[11]   Defendants file two Affidavits opposing Plaintiffs' motion, but neither affidavit addresses the
reasonableness of Plaintiffs' proposed fees.   Further, these affidavits are not from other attorneys in the
area.   One affidavit is from Scott Bensik, a customer services supervisor and key accounts manager for
the City of Jamestown BPU contesting the damages recovered by Plaintiffs, and one is from Defendants'
own attorney, Edward Wright, which does not address hourly rates proposed by Plaintiffs.

Plaintiffs have not adequately established "the reasonableness of both the number of hours worked and the rate charged." *Berry,* 947 F.Supp. at 649 (W.D.N.Y. 1996). Nevertheless, based upon the other available indicia of reasonable rates, not disputed by Defendants, the court proceeds to make a finding as to the applicable rates for this case.

A review of recent attorney fee cases in this district indicates that the requested hourly rate of $240 for Mr. Seeger is not inconsistent with that awarded attorneys of comparable experience in the Western New York legal community. *See Sabatini v. Corning-Painted Post Area Sch. Dist.,* 190 F.Supp.2d 509, 515-16 (W.D.N.Y. 2001) (senior partner awarded hourly rate of $235 for 2000 legal work); *McPhatter v. Cribb,* 2000 WL 743972 (W.D.N.Y. May 25, 2000) ($240/hour for partner is reasonable); *Berry v. New York State Dep't of Corr. Svcs.,* 947 F.Supp. 647 (W.D.N.Y. 1996) (hourly rate of $200-$250/hour reasonable for attorney with 26 years experience).   Alternatively, Ms. Odojewski's requested hourly rate of $160 per hour appears somewhat high for an attorney with her experience at the time she worked on this case. *Sabatini,* 190 F.Supp.2d at 516 (citing *Alnutt v. Cleary*, 27 F.Supp.2d 395, 399-401 (W.D.N.Y. 1998) ("rates of $160, $180 and $205 per hour for middle and senior level associates were commensurate with those prevailing in the community"); *McPhatter v. Cribb*, 2000 WL 743972 * 3 (W.D.N.Y. 2000) (finding "the hourly rates of $125 for a senior associate and $240 for a partner to be reasonable in the Buffalo legal market"); *Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039, 1070 (W.D.N.Y. 1997) (reasonable rate for senior level associate with five to six years experience is $125/hr), *aff'd as modified,*

143 F.3d 47 (2d. Cir. 1998).  The court acknowledges the prevailing rates among practitioners with the same level of education and experience as Mr. Seeger and Ms. Odojewski would be higher today than in previous years.  However, Plaintiffs have not provided the court with any evidence to support their contention that the $160/hr rate for Ms. Odojewski is reasonable for a junior level associate in the current Buffalo market. Moreover, the cases cited above, although decided in previous years, maintain a reasonable rate for senior level associates (with 5 to 6 years of experience) is in the area of $125/hr, less than the rate requested by Ms. Odojewski as a junior associate even if adjusted to reflect current market rates.  *McPhatter,* 2000 WL * 3; *Greenway,* 951 F.Supp. at 1070.  Accordingly, in light of the foregoing and based on the governing caselaw, the court finds that Ms. Odojewski's hourly rate should be reduced to $135/hr and that Mr. Seeger receive an hourly rate of $240.

Once the court has considered the reasonableness of the rate requested, it must determine whether the number of hours worked is reasonable.  In civil rights cases where lengthy fee applications are submitted, judges are not expected to rule on the reasonableness of each entry.  *Walker v. Coughlin,* 909 F. Supp. 872, 881 (W.D.N.Y. 1995) (citing *Terrydale Liquidating Trust v. Barness,* 1987 WL 9694 * 5 (S.D.N.Y. 1987).  "For that reason, many courts have endorsed percentage cuts as a practical means of trimming fat from a fee application."  *Walker, supra,* at 881.  (internal quotation omitted).  Based on the foregoing, except for a few entries which are facially questionable, the court considers the number of hours worked on a categorical basis to determine if a percentage reduction is warranted.

Initially, the court finds that the number of hours spent reviewing client correspondence varies significantly without any reasonable explanation for the discrepancy.  *See* Statement of Legal Service Rendered.  Some entries record that the attorneys reviewed client correspondence in as little as two-tenths (.20) of an hour.  Other entries indicate a simple review of correspondence took 50 minutes to one hour, regardless of whether they were reviewed by Mr. Seeger or Ms. Odojewski.  Plaintiffs have not submitted any additional information to explain the apparently excessive amount of time spent on reviewing correspondence in some instances.  Therefore, the court shall consider the excessive amount of time recorded in reviewing client correspondence as a factor to apply toward reducing the overall award.

Additionally, there are several entries recorded in the Statement of Legal Services Rendered which suggest that Plaintiffs may have incorporated some travel time into their request for fees.  For example, the entry on 1-20-04 for 5.25 hours expended is recorded as "Prepare and attend client meeting (Jamestown) (DJS)."  It is unclear from the language of this entry whether Mr. Seeger included his travel time to and from Jamestown.  An entry on 11-16-04 for 5.50 hours is worded exactly the same.  Further, an entry on 1-27-05 for 6.00 hours is recorded as "Meetings with individual clients and REIA group in Jamestown.  (DJS)."  Similarly, there are entries which state "Prepare <u>and attend</u> Court," "Prepare <u>and attend</u> EBT of Michael A. Anderson," for example, and "prepare <u>and attend</u> initial client meeting."  Statement of Legal Services Rendered.  (Underlining added.)  Plaintiffs do not state where these depositions were held, to which court counsel were going when they 'attended court' or if they included travel time in these entries.  "Courts in this Circuit customarily reimburse attorneys for

24

their travel time at 50% of their normal hourly billing rates." *Alnutt v. Cleary*, 27 F.SUpp.

2d at 400.  As some reduction for travel time is appropriate based upon the governing

caselaw and the likelihood that Mr. Seeger included travel time, at least relative to those

entries that indicate client meetings were held in Jamestown, the court finds that Mr.

Seeger should be compensated for the hours expended on 1-20-04 (5.25 hrs.) at

$240/hr. for 2.25 hours and at $120/hr. for three hours, which the court takes judicial

notice is approximately the time it takes to travel to and from Jamestown by automobile,

on 11-16-04 (5.50 hrs.) at $240/hr. for 2.50 hours and at $120/hr. for 3.00 hours, and

on 1-27-05 (6.00 hrs.) at $240/hr. for 3.00 hours and at $120/hr. for 3.00 hours.  As

stated, *Discussion, supra,* at 24, as the amount of time recorded for reviewing and

drafting client correspondence is, in some instances, apparently excessive, and as the

court cannot determine, based on the entries provided by Plaintiffs, if those entries

which indicate Plaintiffs "prepare[d] for and attend[ed] Court" include travel time, as is

the moving party's burden to establish the reasonableness of the hours expended,

*Berry,* 947 F.Supp. at 649, the court shall reduce by 5% the remaining number of hours

submitted by Plaintiffs to reflect the "occasionally inadequate documentation and the

lower rate of compensation appropriate under the circumstances described above."

*Walker,* 909 F.Supp. at 881 (instead of identifying specific hourly entries which must be

denied, the court reduced the total number of non-travel item hours by 15%).

Plaintiffs seek a request for costs in the amount of $628.26.  Exhibit A to Seeger

Affirmation at 9.  "The Second Circuit has held that an award of fees in a civil rights suit

includes reasonable out-of-pocket expenses incurred by attorneys and ordinarily

charged to their clients."  *Shorter v. Hartford Financial Services*, 2005 WL 2234507 * 13

(D.Conn. 2005) (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d at 763).  Specifically, Plaintiffs seek to recover the following disbursements:

Services Unlimited - process service .......................................$ 40

Purchase Jamestown Code Book ...........................................$ 150

Discovery copying costs (charged by Defendant) ................... $ 329.51

Deposition testimony transcripts ............................................. $ 108.75

Significantly, as in *Shorter*, Defendants here do not oppose Plaintiffs' request for costs.  Pursuant to the holding in *LeBlanc-Sternberg,* the court finds these costs qualify as "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc, supra.*  Accordingly, the court recommends that Plaintiffs recover these costs in full.

In the instant action, Plaintiffs also seek attorneys' fees for work on the instant motion.  As with Plaintiffs' request to recover disbursements, Defendants do not challenge this request.  Specifically, Plaintiffs request the court award Plaintiffs' attorneys "for efforts expended in connection with this application."  Plaintiffs' Reply 2 at 8.  Attorneys' fees for the preparation of a fee application may be awarded.  *Weyant v. Okst,* 198 F.3d 311 (2d. Cir. 1999).  Plaintiffs contend they spent 10.20 hours preparing their fee application.  The court recommends that Plaintiffs be reimbursed for these 10.20 hours.

Before calculating the overall attorneys' fee award Plaintiffs are entitled to in this action, the court considers Defendants' remaining arguments in support of reducing the

lodestar amount.  First, Defendants allege that Defendants acted in good faith by "following the mandates of a statute passed by the New York Legislature in 1923, as well as complying with the mandates of the New York Public Service Law," and that "the City had extended the third-party notification procedure for elderly and infirm residents, for which it was intended by the Public Service Commission, to landlords, in an attempt to address their concerns."  Defendants' Memorandum 3 at 6.  Defendants request that the court consider the Defendants' good faith a factor in arriving at a lodestar figure. Defendants cite no cases in support of the contention that Defendant's good faith diminishes the attorney's fee to which a prevailing party is otherwise entitled to under 42 U.S.C. § 1988.  In fact, courts have found to the contrary.  "[G]ood faith on the part of the defendant is not a factor that is relevant to the assessment of fees." *Knoeffler v. Town of Mamakating,* 126 F.Supp.2d 305, 321 (S.D.N.Y. 2000).  "[T]he purpose behind the Civil Rights Attorney's Fees Awards Act is not to punish losing defendants, similar to punitive damages, but is meant to compensate prevailing plaintiffs."  *Knoeffler, supra,* at 321 (citing *Coalition for Basic Human Needs v. King,* 691 F.2d 597, 602 (1st Cir. 1982)).  Thus, the court finds the assertion that Defendant acted in good faith irrelevant to its determination of Plaintiffs' attorneys' fees.

Defendants further argue that Plaintiffs' motivation for commencing this action was "an attempt to shift their risk of non-payment by their tenants to innocent ratepayers of the City," that Plaintiffs chose "not to protect themselves in their leases or through larger deposits," and that Plaintiffs' ill-conceived motives should be applied toward the reduction of the lodestar amount.  Defendants' Memorandum 3 at 6-7.

27

Again, Defendants cite no caselaw in support of these novel contentions. "The fact that a party has a financial interest in the outcome of the litigation . . . is not a valid reason for denying attorney's fees under section 1988." *Ackerley Communications, Inc. V. City of Salem,* 752 F.2d 1394, 1396 (9th Cir. 1985), *cert. denied*, 472 US 1028 (1985).  Thus, any financial interest Plaintiffs had in the outcome of the litigation is irrelevant to a finding of ill-motivation that would warrant reduction in Plaintiffs' fee award.  Further, the court disagrees with Defendants' assertion that Plaintiffs' primary motivation in commencing this action was to achieve financial gain. In fact, the monetary amounts awarded to Plaintiffs to reimburse them for satisfying liens against their property were relatively insignificant considering the extensive litigation that ensued as a result of commencing this action.  Decision and Order at 2-3. The court accepts Plaintiffs' contention that Plaintiffs commenced this action "to enforce Plaintiffs' constitutional rights for protection of their property and to prohibit Defendants from further violation of Plaintiffs' rights."  Plaintiffs' Reply 2 at 8.  Thus, the court shall not consider Plaintiffs' motivation a factor in adjusting the lodestar amount in this case.

To summarize, Plaintiffs' requests for attorneys fees and expenses should be awarded as follows:

Attorney Fees:

Requested:                                                     $54,756


| | Total Hours Expended: | Total Hourly Amount Requested: |
|---|---|---|
| David J. Seeger, Esq. | 176.05 | $42,252 |
| Alison L. Odojewski, Esq. | 78.15 | $12,504 |

Total Time at Approved Hourly Rate:

David J. Seeger, Esq.          166.05                    at $240/hr.
                              (excludes travel time)

Alison L.Odojewski, Esq.      78.15                     at $135/hr

Subtotal:
David J. Seeger, Esq.                                   $39, 852.00
Alison L. Odojewski, Esq.     _____       $ 10,550.25
                                                        $ 50,402.25

Less 5%:
David J. Seeger, Esq.                                   $ 37,859.40
Alison L. Odojewski, Esq.     _____       $ 10,022.74
                                                        $ 47,882.14

Plus Hours Adjusted
To Include Travel Time

David J. Seeger, Esq.          9                        at $120/hr

Subtotal:
David J. Seeger, Esq.                                   $ 38,939.40
Alison L. Odojewski                                     $ 10,022.74
                                                        $ 48,962.14
Add Disbursement Costs:                                 $     628.26

Total Award:                                            $ 49,590.40


## CONCLUSION

For the reasons stated above, the Plaintiff's motion should be GRANTED and

attorney's fees and costs in the amount of $ 49,590.40 should be awarded.


Respectfully submitted,


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     March 21, 2006
           Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        March 21, 2006
             Buffalo, New York